1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ORLANDO PAYNE,                    )    1:09-cv-00127-GSA-PC
                                       )
12                                     )    SCREENING ORDER
                  Plaintiff,           )
13                                     )    ORDER REQUIRING PLAINTIFF TO EITHER:
          v.                           )
14                                     )        (1)    FILE A SECOND AMENDED
     A. HEDGPETH, et al.,              )               COMPLAINT, OR
15                                     )
                                       )        (2)    NOTIFY THE COURT IN
16                Defendants.          )               WRITING THAT HE WISHES TO
                                       )               PROCEED ONLY ON THE
17                                     )               COGNIZABLE CLAIMS FOUND
                                       )               BY THE COURT
18                                     )
                                       )    THIRTY DAY DEADLINE
19                                     )
                                       )    ORDER FOR CLERK TO SEND COMPLAINT
20                                     )    FORM TO PLAINTIFF
     _____ )
21

22                                **SCREENING ORDER**

23   **I.    RELEVANT PROCEDURAL HISTORY**

24          Orlando Payne ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this

25   civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action

26   on January 21, 2009.  (Doc. 1.)  On March 27, 2009, plaintiff filed an amended complaint.  (Doc. 7.)

27   The amended complaint is now before the court for screening.

28                                         1

## II.    SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to § 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. Discovery and summary judgment motions - not motions to dismiss - "define disputed facts" and "dispose of unmeritorious claims." Id. at 512. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001)). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union

///

Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

### III.    SUMMARY OF AMENDED COMPLAINT

Plaintiff is a state prisoner presently housed at Kern Valley State Prison ("KVSP") in Delano, California, where the events at issue allegedly occurred. Plaintiff names as defendants K. Harrington (Acting Warden), T. Billings (Appeals Coordinator), A. Diaz (Program Sergeant), and Correctional Officers ("C/O") G. Gonzales, M. Tafoya, R. Nunez, and Rojo. All defendants are employed by the California Department of Corrections and Rehabilitation ("CDCR") at KVSP.

Plaintiff alleges as follows in the amended complaint.

On September 30, 2008, plaintiff arrived at KVSP from Corcoran State Prison with a severe medical disability which causes him to be wheelchair bound. Plaintiff is being treated badly because of his disability and his need to be housed in an ADA cell equipped for inmates with disabilities that use wheelchairs.

On October 25, 2008, Sgt. A. Diaz instructed C/O Gonzales and C/O Nunez to search plaintiff's cell in Facility A - Building 7 - Cell 102 Low. C/O Gonzales told plaintiff he wanted to search plaintiff's cell for some contraband medication. Plaintiff did not have the contraband medication and refused to consent to the search, requesting that a sergeant and a nurse be present. Gonzales stated that he does not follow CDCR policies or rules, and CDCR's regulations do not apply to him. Gonzales and Nunez entered the cell, plaintiff's cellmate was locked in the shower, and C/O Rojo and C/O Czarr escorted plaintiff to the sergeant's office to speak with Sgt. Diaz. Gonzales had told Sgt. Diaz that plaintiff threatened the nurse, held his cellmate hostage, and blocked the cell up, which was not true. "Blocking the cell up" meant that plaintiff had covered all the windows and lights in the cell with cardboard. Gonzales had told Sgt. Diaz to send plaintiff to Administrative Segregation for these violations. During the cell search, Gonzales took plaintiff's 18k gold chain and 18k gold cross, and his cellmate's hot pot and Radio Super III, along with other items. C/O Nunez witnessed the cell search but told plaintiff he did not participate in the search because he was tired, had worked a double shift, and wanted to go home. There were at least seven other officers around because Gonzales had hit the alarm

for more staff to come and assist him with plaintiff.  Gonzales did not give plaintiff or his cellmate a receipt slip for the cell search, which is required under CDCR (CCR) Title 15 §§ 3287(A)(4) and 3287(D).

On October 28, 2008, T. Billings, Appeals Coordinator, refused to allow plaintiff's grievance to be processed at the first level, stating that plaintiff has to use the informal level, and that he already had a duplicate appeal.  Billings sent plaintiff's only appeal to staff for informal response, knowing that they do not track informal responses so they get lost.  T. Billings told plaintiff that remedies are not available to him when prison officials fail to respond to grievances during the time period required by CDCR regulations, and he refused to process plaintiff's grievance to the next level.  T. Billings singled plaintiff out for harassment and intimidation because of his disability and for filing 602 grievances and appeals.

On October 29, 2008, Gonzales told other inmates to tell plaintiff's cellmate that if the cellmate moves out of plaintiff's cell, Gonzales would give back the cellmate's property.

On November 5, 2008, Gonzales called T. Billings, whose assigned post is the Inmate Appeals Office, and told Billings not to process any of plaintiff's 602 appeals.  This is the reason plaintiff is unable to exhaust his state remedies.  Also, this deprives plaintiff of speedy review of his grievances, which is often essential to any effective redress prior to bringing a § 1983 civil suit.

Beginning on October 29, 2008, C/O Tafoya conspired with Gonzales to interfere with plaintiff's mail, and to cause other inmates to threaten to assault plaintiff because of his civil suit against Gonzales. Tafoya has told other inmates that move into plaintiff's cell that plaintiff is a problem and they should do what they have to do or Tafoya will move them.  Tafoya has harassed plaintiff, and plaintiff asked him numerous times to be moved to another housing unit or another yard, but Tafoya refused.

On November 6, 2008, Gonzales withheld plaintiff's mail and kept it in the Housing Unit Staff Office.  Gonzales refuses to allow plaintiff's personal mail, and some legal mail, to be sent out via institutional mail, causing plaintiff to send his mail out through another inmate in another housing unit. Gonzales also reads plaintiff's mail to other inmates.

///

4

On November 13, 2008, Gonzales tried to get other to inmates assault plaintiff and/or make plaintiff drop his 602 grievance, citizen's complaint, and civil suit.

From November 28, 2008 until January 26, 2009, Gonzales punished plaintiff for his legal activities by refusing to mail plaintiff's letters to his parents and relatives, and tampering with incoming mail.

Since October 25, 2008, Gonzales has subjected plaintiff to a sustained pattern of harassment and intimidation and singled him out because of his disability, in violation of the ADA and the Eighth Amendment. Acting Warden K. Harrington knows about this problem because on March 1, 2009, plaintiff sent him a letter explaining about a previous civil suit filed by plaintiff and notifying him that the events are still happening. Gonzales' supervisors are aware of his behavior.

On January 30, 2009, plaintiff was found in his cell unresponsive with no heartbeat or pulse. The nurse brought him back with CPR and he was rushed to Delano Regional Medical Center, admitted for tests, and discharged back to KVSP on February 23, 2009. Since then, plaintiff has not received any legal mail sent during his hospital stay.

Sometime between February 7, 2009 and February 12, 2009, while plaintiff was at the hospital, C/O Gonzales came and threatened plaintiff in front of C/O Lopez and one of the nurses. Plaintiff told Gonzales that he would drop the civil suit against Gonzales if he will give back plaintiff's gold chain and gold cross. Gonzales refused and threatened plaintiff with harm by other correctional officers.

Plaintiff requests injunctive relief only. Plaintiff requests the court to issue an order preventing prison officials from punishing plaintiff for filing suit, for C/O Gonzales and C/O Tafoya to stop harassing plaintiff and tampering with his mail, for C/O Gonzales to give back plaintiff's gold chain and gold cross, for T. Billings (Appeals Coordinator) to process plaintiff's grievances and submit them to their next level, for the Acting Warden to prevent mistreatment in the future and, and for plaintiff to be transferred to another prison as soon as possible for his disability.

///

///

///

## IV.    PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A.    Linkage Requirement

Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Plaintiff has not linked the alleged actions of defendants Sgt. Diaz, C/O R. Nunez, or C/O Rojo to any constitutional violation against plaintiff. Plaintiff alleges that Sgt. Diaz instructed correctional officers to search plaintiff's cell and spoke to plaintiff about the violations against plaintiff. Plaintiff alleges that C/O R. Nunez came with Gonzales to conduct a cell search but did not actually participate in the search. Plaintiff alleges that C/O Rojo escorted him to Sgt. Diaz's office. None of these acts

///

6

connect these defendants to any constitutional deprivation alleged to be suffered by plaintiff. Therefore, plaintiff fails to state a cognizable claim under § 1983 against Sgt. Diaz, C/O R. Nunez, or C/O Rojo.

**B.   Exhibits**

With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). Plaintiff has attached exhibits to the amended complaint, without referring to them in the amended complaint. Therefore, the exhibits as submitted are neither necessary nor permissible. The Court strongly suggests to Plaintiff that exhibits should not be submitted where (1) they serve only to confuse the record and burden the Court, or (2) they are intended as future evidence. If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), Plaintiff will have the opportunity at that time to submit his evidence.

**C.   Supervisory Liability**

Plaintiff has named as defendants Acting Warden K. Harrington and others who hold supervisory positions. Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

7

1    Plaintiff alleges that defendant Gonzales' supervisors are aware of his conduct violating plaintiff's

2    constitutional rights, and that Acting Warden K. Harrington knew about plaintiff's problems with

3    Gonzales.[1]  Besides Harrington, plaintiff has not identified any of the supervisors or alleged any facts

4    demonstrating that they knew about the violations and failed to act to prevent them.  Therefore, plaintiff

5    states a cognizable supervisory liability claim against Acting Warden K. Harrington, but not against any

6    of defendant Gonzales' other supervisors.

7        **D.      Failure to Protect**

8        To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

9    conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452

10   U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must

11   provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.;

12   Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th

13   Cir. 1982).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.

14   Hoptowit, 682 F.2d at 1250 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 833 (1994).  To establish

15   a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to

16   a substantial risk of serious harm to the inmates's safety.  Id. at 834.  The deliberate indifference

17   standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in

18   objective terms, "sufficiently serious . . . ."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

19   Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety."

20   Id. at 837.

21       The Ninth Circuit has held on numerous occasions that "prison administrators' indifference to

22   brutal behavior by guards toward inmates [is] sufficient to state an eighth amendment [sic] claim."

23   Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir.1988), overruled on other grounds by Koch v. Ricketts,

24

25       [1]In the amended complaint, plaintiff states that he sent a letter to Acting Warden K. Harrington on March 1, 2009,
     notifying him of the violations against plaintiff by Gonzales.  ACP at 4 ¶2.  Plaintiff is advised that claims arising after
26   January 21, 2009, the date plaintiff filed this action, may not be raised in this action.  42 U.S.C. § 1997e(a).  Therefore,
     plaintiff's letter of March 1, 2009, may not be used as evidence to bring a claim against the Acting Warden based on the
27   allegation that he knew about the violations.

28                                             8

68 F.3d 1191 (9th Cir.1995); Hoptowit, 682 F.2d at 1249 ("Indifference [concerning violence against prisoners] on the part of the administration" that leads to "guard brutality" violates inmates' Eighth Amendment rights.) See also Madrid v. Gomez, 889 F.Supp. 1146, 1248 (N.D. Cal. 1995). Prison officials also violate the Eighth Amendment's proscription against cruel and unusual punishment if they act with deliberate indifference to the threat of serious harm or injury to an inmate by another prisoner. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986); Hoptowit, 682 F.2d at 1250; see also Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir.1989) (deliberately spreading rumor that prisoner is snitch may violate right to be protected from violence while in state custody).

Plaintiff alleges that defendant Gonzales has caused other inmates to threaten to assault plaintiff. Plaintiff also alleges that Gonzales' supervisors, including Acting Warden K. Harrington, knew about Gonzales' behavior toward plaintiff and failed to stop it. Plaintiff also alleges that defendant C/O Tafoya told other inmates that move into plaintiff's cell that plaintiff is a problem and they should "do what they have to do." Therefore, plaintiff states a cognizable Eighth Amendment claim against defendants Gonzales, K. Harrington, and Tafoya.

### E.    Verbal Threats/Harassment

Plaintiff seeks an injunction to stop defendants from harassing him. Verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Therefore, to the extent plaintiff intends to bring a § 1983 claim against defendants for harassment, he will be unable to do so.

### F.    Conspiracy

Plaintiff alleges that C/O B. Gonzales and C/O M. Tafoya conspired together to interfere with plaintiff's mail and to cause other inmates to threaten or assault plaintiff because of his civil suit against Gonzales. In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in

9

concert and that some overt act was done in furtherance of the conspiracy. <u>Sykes v. State of California</u>, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2001) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Oklahoma</u>, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).

In the amended complaint, plaintiff has not alleged any facts supporting the existence of a conspiracy between any of the defendants. Therefore, plaintiff fails to state a claim for conspiracy.

### G.    Prison Appeals Process

Plaintiff alleges that defendant T. Billings, Appeals Coordinator, failed to properly process his prison grievance and submit it to the next level. Plaintiff also alleges that C/O Gonzales told Billings not to process any of plaintiff's 602 appeals. There is no constitutional right to an inmate appeals process. The Ninth Circuit has held that prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003), *citing* <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988). The non-existence of, or the failure of prison officials to properly implement an administrative appeals process within the prison system does not raise constitutional concerns. <u>Id.</u>. See also, <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir.1993); <u>Flick v. Alba</u>, 932 F.2d 728 (8th Cir.1991); <u>Azeez v. DeRobertis</u>, 568F.Supp. 8, 10 (N.D.Ill.1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). A failure to process a grievance does not state a constitutional violation. <u>Buckley</u>, 997 F.2d at 495. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that

10

"imposes a typical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). Accordingly, to the extent plaintiff intends to bring a § 1983 claim against defendants Billings or Gonzales for delays in processing plaintiff's inmate appeals, he will be unable to do so.

## H. **Privacy**

Plaintiff alleges that whenever he receives mail, defendants Gonzales and Tafoya read plaintiff's mail to other inmates. Although plaintiff does not allege that the reading of his mail to other inmates violates his right of privacy, plaintiff's allegations, construed liberally, give rise to the possibility of such a claim. "While there is no 'right of privacy' found in any specific guarantee of the Constitution, the [Supreme] Court [of the United States] has recognized that 'zones of privacy' may be created by more specific constitutional guarantees and thereby impose limits upon government power." Paul v. Davis, 424 U.S. 693, 712-13 (1976). "[P]ersonal rights found in this guarantee of personal privacy must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty.'" Id. at 713, quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937). Therefore, plaintiff states a cognizable claim for violations of his right to privacy against defendants Gonzales and Tafoya for reading plaintiff's mail to other inmates.

## I. **Incoming Mail**

Prisoners have a First Amendment right to receive mail. Prison Legal News v. Lehman, 397 F.3d 692, 699 (9th Cir. 2005) (citations omitted). The right is subject to substantial limitation, however, and the regulation or policy infringing on the right will be upheld if it is reasonably related to legitimate penological interests. Id. (citations omitted). Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the

"accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." <u>Id.</u> at 89-90. However, isolated incidents of mail interference or tampering will not support a claim under section 1983 for violation of plaintiff's constitutional rights. <u>See</u> <u>Davis v. Goord</u>, 320 F.3d 346, 351 (2d. Cir. 2003); <u>Gardner v. Howard</u>, 109 F.3d 427, 431 (8th Cir. 1997); <u>Smith v. Maschner</u>, 899 F.2d 940, 944 (10th Cir. 1990).

Plaintiff alleges that on November 6, 2008, defendant Gonzales withheld plaintiff's mail and kept it in the Housing Unit Staff Office. Plaintiff also alleges that from November 28, 2008 until January 26, 2009, Gonzales tampered with his incoming mail. Under these facts, the court finds that plaintiff states a cognizable First Amendment claim against defendant Gonzales for interfering with plaintiff's right to receive mail.

**J.     Outgoing Mail**

Prisoners have "a First Amendment right to send and receive mail." <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995). Censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." <u>Procunier v. Martinez</u>, 416 U.S. 396, 413 (1974) (overturned by <u>Thornburgh</u>, 490 U.S. at 413-14, only as test relates to *incoming mail* - <u>Turner</u> test applies to incoming mail).

Plaintiff alleges that defendants Gonzales and Tafoya refused to allow plaintiff's letters to his parents and relatives, and some legal mail, to be sent out via institutional mail, forcing him to send his mail out through another inmate in another housing unit. Taking plaintiff's allegations as true and applying the liberal federal notice pleading standard set forth in Federal Rule of Civil Procedure 8(a), the court finds that plaintiff states a cognizable First Amendment claim against defendants Gonzales and Tafoya for refusing to send plaintiff's personal and legal mail.

**K.     Due Process - Property Interest**

Plaintiff alleges that Sgt. Diaz instructed C/O Gonzales and C/O Nunez to search plaintiff's cell for contraband medication, which plaintiff did not have. Plaintiff alleges that he refused to consent to

the search, requesting that a sergeant or nurse be present, but defendant Gonzales continued to proceed with the search, claiming that the CDCR's policies, rules and regulations do not apply to him. Defendant Gonzales conducted a search of the cell, took plaintiff's and his cellmate's personal property, and did not provide them with a cell search receipt, which is required under CDCR (CCR) Title 15 §§ 3287(A)(4) and 3287(D).

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Logan, 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized deprivations of property are permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89. However, that defendants may have failed to comply with state regulations is not grounds for relief under section 1983 for deprivation of due process.

Neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533. Further, in the event that the destruction was authorized and therefore actionable under section 1983, plaintiff has not alleged any facts suggesting that he was deprived of due process. As long as plaintiff was provided with process, prison officials may deprive him of his property.

**L.    Due Process - Liberty Interest**

Plaintiff alleges that false allegations were brought against him by defendant Gonzales, and Gonzales recommended to Sgt. Diaz that plaintiff be placed in Administrative Segregation based on these allegations. Even though plaintiff mentions getting a medical clearance for Administrative

13

Segregation, it is not clear in the amended complaint whether plaintiff was actually placed in Administrative Segregation ("Ad-Seg").

With respect to placement in Ad-Seg, due process requires only that prison officials "hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated," that prison officials "inform the prisoner of the charges against [him] or the reasons for considering segregation," and that the prisoner be allowed "to present his views." Toussaint, 801 F.2d at 1100-01. Prisoners are not entitled to "detailed written notice of charges, representation by counsel or counsel substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." Id. Further, "due process does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation." Id.

Because plaintiff has not established that he was actually placed in Ad-Seg, or that he was deprived of the due process required, he fails to state a cognizable claim for due process violations based on his placement in Ad-Seg.

**M.      Retaliation**

Plaintiff alleges that defendants Gonzales and Tafoya attempted to get other inmates to assault plaintiff because plaintiff filed a complaint against Gonzales. Plaintiff alleges that Gonzales punished him for his legal activities by refusing to mail letters to his parents and relatives and tampering with incoming mail. Plaintiff alleges that Gonzales told T. Billings, Appeals Coordinator, not to process any of his 602 appeals. Plaintiff also alleges that Billings singled plaintiff out for harassment and intimidation for filing 602 grievances and appeals.

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). "Within the prison context, a viable claim of First Amendment retaliation entails five elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408

14

F.3d 559, 567 (9th Cir.2005) (*citations omitted*).  In assessing the fourth requirement, the court at the pleading stage should ask " 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.' "  Id. at 568, *quoting* Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir.1999).  "The 'government' to which the First Amendment guarantees a right of redress of grievances includes prison authorities, as it includes other administrative arms and units of government." Bradley v. Hall,64 F.3d 1276, 1279 (9th Cir.1995), *citing* Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989).  An allegation that a defendant subjected a prisoner to "[v]erbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." Oltarzewski, 830 F.2d at 138 (*internal quotations omitted*).  However, in the context of a prisoner's retaliation claim, threats of discipline or transfer for the plaintiff's exercise of his First Amendment rights are sufficient adverse action to state a claim. See Gomez v. Vernon, 255 F.3d 1118, 1123 (9th Cir.2001); Valandingham, 866 F.2d at 1141.

Plaintiff's allegations in the complaint are sufficient to give rise to a claim for relief against defendants Gonzales, Tafoya, and Billings for retaliation.

**N.    Discrimination**

Plaintiff alleges that defendants Gonzales and Billings singled him out because of his disability and subjected him to a sustained pattern of harassment and intimidation.  Plaintiff alleges that he has a severe medical disability which causes him to be wheelchair bound, and he is being treated badly because of his disability and his need to be housed in an ADA cell equipped for inmates with disabilities that use wheelchairs.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal protection claim may be established in two ways.  First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's

///

15

membership in a suspect class, such as race.   <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.   <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>San Antonio School District v. Rodriguez</u>, 411 U.S. 1 (1972); <u>Squaw Valley Development Co. v. Goldberg</u>, 375 F.3d 936, 944 (9th Cir.2004); <u>SeaRiver Mar. Fin. Holdings, Inc. v. Mineta</u>, 309 F.3d 662, 679 (9th Cir. 2002).   To state an equal protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.   <u>Village of Willowbrook</u>, 528 U.S. at 564.   If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." <u>Squaw Valley</u>, 375 F.3d at 944; <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1187 (9th Cir.1995).

Plaintiff  fails to allege facts showing that defendants treated him differently because of his disability.   Therefore, plaintiff fails to state a cognizable Equal Protection claim against any of the defendants.

**O.**      **Americans With Disabilities Act**

Claims under the ADA are not cognizable against defendants in their individual capacities.  Title II of the ADA "prohibit[s] discrimination on the basis of disability."  <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."  42 U.S.C. § 12132.  Title II of the ADA applies to inmates within state prisons.  <u>Pennsylvania Dept. of Corrections v. Yeskey</u>, 118 S.Ct. 1952, 1955 (1998); <u>see also</u> <u>Armstrong v. Wilson</u>, 124 F.3d 1019, 1023 (9th Cir. 1997); <u>Duffy v. Riveland</u>, 98 F.3d 447, 453-56 (9th Cir. 1996).  "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from

16

participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." <u>Lovell</u>, 303 F.3d at 1052. "To recover monetary damages under Title II of the ADA . . . , a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1138 (9th Cir. 2001).

Plaintiff has not alleged facts which support a claim that he "was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities . . . *by reason of [his] disability*." <u>Lovell</u>, 303 F.3d at 1052 (emphasis added). The allegations that defendants Gonzales and Billings singled plaintiff out for harassment and intimidation because of his disability, without more, do not give rise to a claim for violation of the ADA.

Further, "'Title II of the ADA prohibits discrimination in programs of a public entity or discrimination by any such entity.'" <u>Roundtree v. Adams</u>, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005) (quoting <u>Thomas v. Nakatani</u>, 128 F.Supp.2d 684, 691 (D. Haw. 2000)). "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" <u>Roundtree</u>, 2005 WL 3284405, at *8 (citing 42 U.S.C. § 12131(1)(A)-(B)). Public entity, "'as it is defined within the statute, does not include individuals.'" <u>Id</u>. (quoting <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)). Thus, individual liability is precluded under Title II of the Americans with Disabilities Act, and plaintiff may not pursue his ADA claim against the individual defendants named in the complaint. Therefore, plaintiff fails to state an ADA claim against defendants Gonzales, Billings, or any of the other defendants in their individual capacities.

**P.      Fourth Amendment**

Plaintiff claims that his Fourth Amendment rights were been violated by defendants by their sustained pattern of harassment and intimidation, singling him out because of his disability and for filing 602 grievances. Plaintiff may also intend to bring a Fourth Amendment claim concerning the search of his cell and seizure of his personal property.

///

17

The Fourth Amendment protects individuals against unreasonable searches and seizures. However, an inmate has no "reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures." <u>Hudson</u>, 468 U.S. at 536. Moreover, after the Supreme Court decision in <u>Sandin</u>, 515 U.S. at 485-86, a jail official cannot be liable for inspecting inmate's legal materials outside his presence, even where jail's regulations prohibit it, because such conduct is "simply not a dramatic departure from the basic conditions of incarceration." <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 522 (1996). Therefore, plaintiff's allegations, without more, do not state a Fourth Amendment claim.

**Q.    Claims Arising After Plaintiff Commenced This Action**

Plaintiff alleges that he has not received any legal mail sent during his hospital stay which began on January 30, 2009. Plaintiff also describes an encounter with defendant Gonzales in February 2009, during which he threatened plaintiff. Plaintiff also alleges that Acting Warden K. Harrington knows about plaintiff's problems with defendant Gonzales because on March 1, 2009, plaintiff sent Harrington a letter.

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion must occur *prior* to filing suit. <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002), and "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" <u>Id.</u> at 524 (citing to <u>Booth v. Churner</u>, 532 U.S. 731, 739 n.5 (2001)). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. <u>Booth</u>, 532 U.S. at 741.

Plaintiff filed this action on January 21, 2009, and the claims raised in this action must have been exhausted prior to that date. In light of section 1997e(a), Plaintiff may not add any new claims that

arose after suit was filed on January 21, 2009. In a "conflict between Federal Rule of Civil Procedure 15 and the PLRA, the rule would have to yield to the later-enacted statute to the extent of the conflict." Harris v. Garner, 216 F.3d 970, 982 (11th Cir. 2000). Rule 15 "does not and cannot overrule a substantive requirement or restriction contained in a statute (especially a subsequently enacted one)." Id. at 983; see also Cox v. Mayer, 332 F.3d 422, 428 (6th Cir. 2003) (citing Harris for this proposition with favor). Allowing Plaintiff to pursue the new claim he added in his amended complaint would allow Plaintiff to thwart the mandate of section 1997e(a), which requires that claim exhaustion occur prior to filing suit and not during the pendency of the suit. McKinney, 311 F.3d at 1199-1201. Therefore, plaintiff's claims arising from events occurring after January 21, 2009, may not be raised in this action.

## V. CONCLUSION

The court finds that plaintiff's amended complaint states cognizable claims for relief under section 1983 against Acting Warden K. Harrington for supervisory liability, against C/O G. Gonzales, C/O Tafoya, and Appeals Coordinator T. Billings for retaliation under the First Amendment and failure to protect plaintiff under the Eighth Amendment, against Gonzales and Tafoya for violation of plaintiff's constitutional right to privacy and First Amendment right to send mail, and against Gonzales for violation of plaintiff's First Amendment right to receive mail. However, plaintiff's complaint does not state any other claims upon which relief may be granted under section 1983. The court will provide plaintiff with the opportunity to file a Second Amended Complaint, if plaintiff wishes to do so.

If plaintiff does not wish to file a Second Amended Complaint and is agreeable to proceeding only against defendants Gonzales, Tafoya, and Harrington on the claims found cognizable by the court, plaintiff may so notify the court in writing. The court will then issue Findings and Recommendations recommending that the remaining claims and defendants be dismissed from this action, and will forward plaintiff three (3) summonses and three (3) USM-285 form to fill out and return to the court. Upon receipt of these documents, the court will direct the United States Marshal to initiate service of process on defendants Gonzales, Tafoya, and Harrington.

In the event that plaintiff does wish to file a Second Amended Complaint, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any

19

prior pleading.  As a  general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiff chooses to file a Second Amended Complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The Second Amended Complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo, 423 U.S. at 362; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants relating to issues arising after January 21, 2009.  In addition, plaintiff should take care to include only those claims that have been exhausted prior to the initiation of this suit on January 21, 2009.  The Second Amended Complaint should be boldly and clearly entitled "Second Amended Complaint," refer to case number 1:09-cv-00127-GSA-PC, and be signed by plaintiff under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.    The Clerk's Office shall send plaintiff a civil rights complaint form;

2.    Within **thirty (30) days** from the date of service of this order, plaintiff must either:

a.    File a Second Amended Complaint curing the deficiencies identified by the court in this order; or

b.    Notify the court in writing that he does not wish to file a Second Amended Complaint and instead wishes to proceed only against defendants Gonzales, Tafoya, and Harrington on the claims found cognizable by the court; and

///

///

///

20

3.       If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:    **May 7, 2009**                **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE